# Richmond.

## CARR'S ADM'R v. MORRIS.

May 10th, 1888.

Absent, *Richardson,* J.

1. FIDUCIARIES—*Liability.*—It is well settled that trustees investing trust money in an unauthorized security, are responsible for any future loss traceable to their error.

2. IDEM—*Case at bar.*—A receiver is ordered by the court to lend a trust fund at six per cent. per annum interest, on bond secured by trust deed on real estate, payable to himself, with interest, recoverable by suit upon default, and entire debt to be payable upon two successive defaults of interest, and to make report of his actions. He lends this money at eight per cent. per annum, on notes payable to another, secured by trust deed on real estate, and neglects to enforce the debt upon default and to report; the trust money is lost;

HELD:

> The receiver is chargeable with the loss, though no bad faith is shown.

Appeal from decrees of circuit court of Albemarle county, rendered, respectively, May 18th, 1881, May 11th, 1882, and February 8th, 1883, in the proceedings instituted by the administrator of John A. Carr, deceased, to rehear and reverse the decree exempting Joseph W. Morris, receiver, from liability for the loss of certain trust money he had been ordered to lend out on specified terms, and to allow him to resign the receivership. The circuit court refused to rehear the decree, and the said administrator appealed to this court. Opinion states the facts.

*Duke & Duke,* and *Wm. J. Robertson,* for the appellants.

*S. V. Southall,* for the appellees.

LACY, J., delivered the opinion of the court.

The case is as follows: At the December term of the county court of Albemarle, 1841, a decree was rendered in the consolidated and pending causes of *Carr, Guardian,* v. *Carr,* and *Merriweather* v. *Carr,* by which the late Lucien Minor was appointed a receiver to collect and hold invested the sum of $5,707.50 for the benefit of Mrs. Barker, who, as the widow of John A. Carr, deceased, had been entitled to a dower interest in the lands of her late husband, and whose then husband, John W. Barker, and herself had agreed to accept the annual interest on one third of the proceeds of the sale of his lands, which was the said sum of $5,707.50, during her life; the said sum to be lent out by the said Minor at six per centum interest, payable at some fixed day in each year, taking from the borrower a bond with good personal security, and also a lien upon real estate worth at least the sum aforesaid, with a stipulation that, if the interest be not paid at any time when due, the installments thereof so in arrears may be sued for; and, if two or more yearly installments thereof be at any time unpaid, the whole debt and interest shall be considered as demandable, and the lien be enforced; the bond to be payable to the justices now sitting, with condition as aforesaid, and the said receiver, as soon as he has collected and lent the money, shall report his proceedings to the court. In January, 1859, Minor having died, the appellee, J. W. Morris, was appointed receiver in his stead, "with the same powers and duties that were conferred and imposed upon said Minor, as such receiver, especially that said Morris, as such receiver, shall take control and management of the fund of $5,707.50, which, as appears from the report of said Minor, was lent by him to William B. Gordon; that he collect and pay over to J. W. Barker

and Ellen M., his wife, in right of the latter, for and during the term of her natural life, all interest due, or to become due, on said fund, after deducting therefrom his own commissions as receiver, and the costs and charges of collection; and also that he col ect and reinvest the principal thereof whenever he shall deem it expedient so to do, taking, in the event of such reinvestment, a bond payable to himself as receiver, secured in the same manner in all respects with that taken by said Minor, viz , by good personal security, and a deed of trust upon land worth at least the sum aforesaid, with a stipulation that if, at any time, the interest be not paid when due, the installment thereof so in arrear may be sued for, and, if two or more yearly installments thereof be at any time unpaid, the whole debt and interest shall be considered as demandable, and the lien be enforced." "And said Morris, as such receiver, shall from time to time, when, and as it may be necessary and proper, report his proceedings to this court." In April, 1860, following, Joseph W. Morris made report that the bond was lost; but was author zed to collect and did collect the amount of the same as a lost bond. And the said Morris was directed to make report to court of all his acts and doings under this decree; but Morris, coming into possession of this fund under this decree, made no report of it, and rendered no account of it, until March, 1880, when being called on to do so, he reported (1) that he lent the money according to the decrees aforesaid, until October 11, 1873, when, (2) the fund being in hand for investment, he loaned in equal parts to John B. and Lewis E. Harvie; that the debts thus created are evidenced by two negotiable notes, both dated October 11, 1873, payable twelve months after date, each bearing interest at the rate of eight per centum per annum, each for $2,853.75, one made by John B. Harvie and indorsed by Lewis E. Harvie, the other made by Lewis E. Harvie and indorsed by John B. Harvie, secured by trust deed on two hundred and fifty feet of land, worth double the amount of the debt. (3) That the Harvies paid interest to 14th of October, 1876, and failed, giving in

March, 1877, general deeds of trust, and they had paid no inte-
rest since; that he had disbursed the interest, except $315.12,
which he had retained to meet expenses; that he was infirm,
and wanted to be relieved as receiver.   In December following,
he further reported, in response to exceptions filed, that the
investments made in 1873 were not in conformity with the
decrees under which his powers were derived; that the actual
terms were better than the prescribed terms; that eight per
cent. instead of six per cent. interest was obtained; that the real
estate security was double the value of the fund, instead of equal
to it; that judgments had been obtained on the notes, and they
were as good as bonds; that the name of the receiver was not
to be found in the trust deed, nor in the notes, but before matu-
rity they were placed in the hands of a banker, who collected
the interest, who ear-marked them, "Cr., J. W. Morris, receiver";
that it was useless to bring suit upon the failure of the Harvies,
as nothing could be done except save the notes from running
out of date; and that the residue of the fund in his hands men-
tioned above, retained to pay costs, had been exhausted by
paying lawyer's fees.   The court below, upon the report and
exceptions and evidence offered, absolved the receiver from all
responsibility, accepted his resignation, and appointed other
receivers.   The appellant then caused the real estate in ques-
tion, upon which the said fund was secured, to be advertised for
sale under the trust deed, and notified Morris that, unless the
said real estate should sell for enough to pay the accrued taxes
thereon, amounting to $600 or $700, and the principal of the
fund, he would move the circuit court of Albemarle for a rehear-
ing of the former decree.   On January 29, 1883, the new receivers
reported to the court that the real estate aforesaid had been
advertised for sale, and after strenuous efforts not a single bid
was made, and nothing could be got for the piece of land, upon
which there was a claim for taxes to the amount of $681, and
Carr's administrator moved for a rehearing of the said decree;
but the court refused to rehear the decree, and exonerated the

receiver from all responsibility. Whereupon Carr's administrator appealed to this court.

It is quite clear, and is perhaps beyond dispute, that the fund intrusted to the appellee in 1860 had, when he resigned his trust, in 1881, become a total wreck. The strip of land upon which he rested for security was situated in the city of Richmond, but was inaccessible to its streets, unimproved, and possessing only a speculative value. Cut off from the city by the broad basin of the canal, it was isolated on the other side by the James river ; and whatever may be its estimated value, in the market it has none, or practically none. Then a loss has occurred. On whom must the responsibility rest ? If the receiver had followed the lines of his chart, had obeyed in all respects the decrees of the court under which he acted, such loss cannot fall on him; but if he departs from the decree, and a loss occurs, he may be responsible, if his departure has caused the loss. Where his negligence, or his misconduct, or departure from the court's decree, has clearly caused the loss, then he must bear the consequences of his own unauthorized acts. And where he declines to obey the decree, and declines to ask for instructions, and declines to make report of his transactions, and declines to ask confirmation from the court of his unauthorized acts, he cannot be said to be acting under the decree of the court; but it is but just to consider that he is acting upon his own responsibility, and he must answer for any loss he may cause. If no loss occurs, then there is no injury, and no cause of action against him ; but he incurs the risk, and, if loss occurs, it is his. In this case loss has occurred ; but it is conceded that no bad faith can be ascribed to the receiver, but the loss is ascribed to negligence on his part. He lent the money on negotiable notes, secured on land of no value. When he was directed to lend it in his own name as such receiver, on bond secured by deed of trust, it is not certain that the court would not have sanctioned this if called upon to do so, as the worthless character of the land was not known to the

receiver, and might not have been known to the court. But in that event it would have been the act of the court, and no responsibility could have attached elsewhere. As it is, it is the act of the receiver, and responsibility cannot attach elsewhere. He does not seem to have himself transacted the business, but left it entirely to others, who have sustained him to the full with their opinions; but the facts appear otherwise, and the land appears to be of little value, as no person will give anything for it. The negligence of this receiver did not stop with this injudicious act, but he has suffered the taxes to remain unpaid, and thus to weaken the security, and upon the failure to pay interest, he let the matter rest without suit, and only sued to keep the matter from running out of date; and, after obtaining judgment, the land has remained unsold to this day; and, when called to account, he paid the last dollar in his hands to counsel to defend his interests, and resigned. The circuit court sustained him in all this, and the question is brought here whether the loss of this fund should fall on the innocent and faultless owners of the fund, or upon him who has, by his own negligence, assumed and incurred the responsibility.

It is well settled that trustees investing trust money in an unauthorized security are responsible for any future loss traceable to their error. It is not certain that the loss of this fund is due to the particular investment; to the fact that notes were taken instead of bonds; that eight per cent. was charged in interest instead of six per centum; that the notes were not taken in the name of the receiver nor secured by trust deed in his name; that he failed to sue for the first annual default in interest; that he failed to call in the fund by enforcing the trust deed after two years' default. But it is certain that the decree directed otherwise, and that he did all these things without authority, and it is equally clear that the loss has occurred; and, upon every just principle, the loss is his. The circuit court erred in its decree of May, 1881, and in the decrees of May, 1882, and February, 1883, in absolving the receiver from all

responsibility for this loss. The loss should be ascertained by a sale of the land for whatever it may bring, a settlement of the transactions of the receiver had, and, after crediting him with what can be realized from the sale of the land and all proper payments on account of the fund, a decree should be rendered against him for the balance.

The said circuit court having held otherwise, the said decrees will be reversed and annulled, and the cause remanded for further proceedings to be had in the cause to the attainment of these ends.

DECREE REVERSED.